Case number 17-4094. Brandon Hobbs v. Mark Hooks. All arguments not to exceed 15 minutes per side. Mr. Dennis Belli for the appellant. Good morning, your honors. Good morning, Mr. Belli. Dennis Belli on behalf of Brandon Hobbs, the petitioner who appeals from the denial of his petition for habeas corpus, which challenged his state court conviction for murder. The underlying facts are remarkably simple. The victim and Mr. Hobbs had a running dispute over a failure to transfer some motor vehicle registration plates. Eventually, Mr. Kirksey, the purchaser, was shot. According to the prosecution, Mr. Hobbs shot Mr. Kirksey in cold blood. There was no excuse for it, whereas the defense presented both Mr. Hobbs and his girlfriend testifying that Mr. Kirksey pulled a gun on Mr. Hobbs and Mr. Hobbs fired in self-defense and defense of his girlfriend. He got off six rounds before the other guy could shoot back? Yes. What about the two rounds that he shot while he was on the ground? Is that relevant in any way here? I don't think in the context of this case because there was no testimony establishing which round caused death. It may have been relevant for the jury, but I don't think in terms of prejudice here that it's significant. One thing that the defense had going for it is the DNA evidence from the gun that Mr. Hobbs said that Mr. Kirksey pulled on him. That was tied to Mr. Kirksey and also the fact that the state's main witness, the cousin of Mr. Kirksey, had lied to the police. Which person was that? Was that Gaston? There were a number of people who were at the scene, so which person are you saying was engaged? There were two eyewitnesses for each side. On the prosecution side, it was Mr. Mackey, who was the cousin of the decedent, and then Ms. Gaston, his girlfriend. Whose house was it? Gaston's home, where all this happens? Yes. So the competency of counsel and his strategy here is a significant factor. It's the only issue before you. Our argument is that defense counsel assisted the state in convicting his own client by, number one, not objecting to just a plethora of testimony regarding Mr. Hobbs' past conduct involving drug dealing and firearms. The state was out to portray him as a gun-toting drug dealer. He moved in limine to exclude drug and gun testimony, didn't he? That's true. And then the court, for whatever reason, decides to let some of that come in. The record is somewhat perplexing. One problem is that there was no written motion filed to keep it out, no case law provided to the judge. The judge initially says, well, no, I'm not going to permit any testimony about guns or drugs unless it's established that there was some drug deal going on when the gun was used to kill the decedent. Then during the state's first witness, which would have been Ms. Gaston, the prosecutor started asking questions that were clearly forbidden. Defense counsel objected, and for some reason the trial judge overruled the objections. I think possibly the trial judge thought he'd let the prosecutor go down that road a little bit, thinking that drugs had something to do with the killing. On the ineffective assistance point, the defense lawyer objects repeatedly to this testimony while Gaston's being questioned, to the point where the court gives the lawyer a continuing objection and just says, stop objecting. After moving in limine and then objecting until instructed no longer to object by the court, how can any of that be the basis of ineffective assistance? Well, because there's much more. Number one, I think that defense counsel should have been armed with legal precedent. Our brief cites numerous Ohio cases that say that this type of evidence is off limits. He should have litigated that whole issue better, but I believe that... I think that Hinton case from the U.S. Supreme Court, 2014, addresses that, that the defense attorney did not research the law, could not cite the trial judge to the statute that was directly applicable. I think that that supports us, but even if the prosecutor went overbounds during the direct examination and the judge made some erroneous rulings, what happens next is that on cross-examination, defense counsel draws out much more testimony regarding drugs and guns than the prosecutor did. Something that the court of appeals, the state court of appeals, never mentions is the fact that at some point the judge got alarmed and he calls the defense attorney and the prosecutor up to the bench and tells the defense attorney, you better stop this. You are tainting the hell out of the defendant. So the judge was having second thoughts, and then things just went completely out of control. The prosecutor cross-examines Mr. Hobbs' girlfriend extensively about his drug activities and guns, and then when Mr. Hobbs takes the witness stand, it's just a tour de force. We've quoted portions of the cross-examination in the brief, and the prosecutor is just having a field day. Wow, you started dealing in drugs when you were 17, still living with your parents, and you started with marijuana, you went up to cocaine and pills, and you were making all this money. That had nothing whatsoever to do with this case because the dispute had nothing to do with drugs and everything to do with license plates. Granted, but this trial apparently was really boiled down to a credibility contest between Hobbs and maybe Gaston or whoever the chief prosecution witnesses were. Given that some drug and gun evidence had come in over the lawyer's objection, is it arguably trial strategy after that point when he decides, you know what, we're going to just kind of totally come clean with the jury, my guy is going to be very transparent, and he's going to embrace the truth of everything, and overall that will help his credibility on the more important question of whether the other guy pulled a weapon before my guy shot him. Couldn't a reasonable jurist conclude along those lines? No, I really don't think so because it's one thing to say that on this particular date Mr. Hobbs may have intended to sell drugs to one of the people at the house, but it's another thing to just amplify it all and go back to this long history. There's just no need for it, and I think this court's decision in White v. McAnich supports us on that. This court flatly stated in that opinion that it is rarely a sound trial strategy to be bringing out or allowing to be brought out all sorts of other acts of evidence that shows a propensity of the defendant to commit crime and taints him in the eyes of the jurors. Things just went overboard. I think they just spiraled, and once they started down this path, the judge was unwilling to reverse things, and the defense counsel, instead of standing his ground and saying, judge, you better declare a mistrial here because this has really gotten out of control, he just goes with the flow and throws this all out. And then in closing argument, all of a sudden he's backtracking saying, hey, this case is not about guns or drugs. Well, if it's not about guns and drugs, why did you elicit all this testimony and help the prosecutor taint the client?  The sense that the state court appeared to derive or to observe or to find is that by doing so, it conveyed to the jury that my guy is just telling you the way it is, and things are rough out there and people are doing drugs and all this kind of stuff. We're not trying to hide that, and concerned that the jury might perceive that they're trying to hide that. So how do you establish candor? You say things that otherwise you might want to hide. That's a way of demonstrating candor. I mean, I'm no trial lawyer. I don't know whether that's a good strategy, but we are just reviewing whether the state court was reasonable in making that determination. Is that correct? That is the standard. Was it an unreasonable application? We've got to say that that analysis is just unreasonable. That's a difficulty I'm having with the argument, I guess. Well, the trial jury. I mean, you can say, well, this doesn't make sense, and I'm making a reasonable argument that this is not the way that the lawyer should go, but the state court is saying, well, we think a reasonable lawyer might have done this, and then we have to determine whether that, in turn, is reasonable. That's hard, right? I mean, I understand what you're saying. Well, the trial judge himself early on told defense counsel that what he was doing was tainting his client. So there you have a jurist with a firsthand view of what's going on saying, this doesn't make sense. That's not what we have to defer to. What we have to defer to is the Court of Appeals analysis of whether a reasonable lawyer could have thought that this was the district court or that the trial court was wrong. Do you see the difficulty? I understand, but I would submit that if federal habeas review is still to have some purpose to be meaningful, at some point a federal court has to look at things and say, hey, have we reached the limit of deference to a state court? It's not reasonable. Yeah, it's unreasonable. I just can't imagine that this sort of trial strategy can be determined reasonable. And I think this is the central message that White v. McAnich sends, that you can look into the record and determine whether this idea of, well, it's reasonable is just a post hoc rationalization for what occurred in here. The most important point I think I can make is that defense counsel thought it was a very bad idea for this type of evidence to come into the record, hence the motion in limine, and then his initial objections. So this wasn't. White wasn't an AEDPA case, though, right? I'm sorry? White v. McAnich was not an AEDPA case, or it was? That's true, it was not. But I still think it's an extremely well-written decision, and I think it's very pertinent here. Thank you. Thank you. Mr. Lamb? May it please the Court, I'm Bill Lamb. I represent the warden in this case. I have two primary points that I'd like to make, and then I would like to answer, if I can, the Court's questions. The first point I need to make is that this was always a case of self-defense, and because it was always a case of self-defense, Hobbs had to testify, as he did, as to his drug activities in carrying a concealed weapon. The second point I need to make is if you look at the lengthy opening statement and the lengthy closing argument of defense counsel, you see defense counsel in control of his case. And the last thing that defense counsel said in his opening statement to the jury was that his contention was that this was a self-defense case. That was the defense choice. It was the only choice in the case, and it made some difficulties for the case for the defense. And I'd like to discuss those difficulties and then try to answer the Court's questions. Well, on your first point, a lot of people carry concealed weapons, legally or not. Why did he need, as a matter of strategy here, to wallow in his drug-dealing history in order to explain to the jury why he had a weapon that day? The second element of the affirmative defense of self-defense in Ohio is that Hobbs had to have a bona fide belief that he was in imminent danger of death at Great Boston. He says that happened because the decedent pulled a pistol on him. But he also has to explain, and the third element, by the way, is that he did not have a duty to retreat. The two kind of mesh together with the concealed weapon issue. Well, I mean, I guess my bottom line point is if the other person pulls a pistol on him, it doesn't matter why he's carrying or whether it's legal for purposes of the murder charge, he's allowed to defend himself. That's the defense view, right. But he's carrying a concealed weapon because he's a drug dealer, and he has to show, well, I didn't go to the location for this dispute over a vehicle. I went to this location carrying a concealed weapon, first of all, to sell drugs to Mackey. It was Mackey's house, by the way, not to get into a dispute with a vehicle. And that's the first affirmative element of the affirmative defense. And secondly, because I'm a drug dealer, I always carry drugs and money, so I have to have a concealed weapon all the time because I'm a drug dealer. So I didn't carry a concealed weapon with the intent of shooting the victim if there was any resistance over this dispute involving a vehicle. He testifies to that, and that has to mesh with the three elements of the affirmative defense of self-defense. I understand your point. My last point, though, on the affirmative defense of self-defense, and this may answer one of the Court's questions, the duty to retreat. This was going to be difficult to start with. The defense counsel argued this was a matter of who got off the first shot. Well, a little bit of defense poetic license perhaps. There were two volleys of shots. The coroner testified that the victim had six wounds, some of them in a downward trajectory that suggested that maybe the victim was shot when he was already down. And Hobbs' own girlfriend, Miss Abrams, testified that she heard two volleys of shots, four and four, at transcript 523 and 524. So that was always going to be a difficult argument, but it was the best argument the defense counsel had. Where you have two volleys of shots, there was only evidence of one gun at the scene. It doesn't suggest the second volley was a riposte to the first volley. It kind of rebutts that affirmative defense of self-defense. But that's what you have. If you're a defense counsel, that's what you go with. How about counsel's choice during, I guess, the cross-examination of Gaston to really wallow in all this drug and gun testimony? I mean, Mr. Belli makes the point that you ought to try to contain the damage and that it sort of blows open during that cross and gets even worse during Hobbs' own testimony. What's your response to that? First of all, the trial judge's statement that the evidence he thought might be tainted comes early in the case. In Gaston's testimony, the trial judge maybe hasn't quite figured out where this case is going. But after the continuing objection is made, it's interesting. The defense counsel, any defense counsel, has an interesting choice. You can say, oh, great, now I have an appellate issue that's going to be reviewed on an abusive discretion standard, or I still have my high-risk, high-reward strategy of self-defense that I told the jury that I was going to use in my opening statement. Which do I do? And I suggest that it's most likely most defense counsel will say, I'm going to go with a high-risk, high-reward strategy of self-defense and not rely upon an appellate argument that's going to be reviewed anyway based upon an abusive discretion. That brings me to my second point. I'd like to point out the defense counsel's opening statement at transcript 22-34. It's 12 pages, and the last thing the defense counsel says in his opening statement to the jury is, quote, but the question will be whether or not Brandon Hobbs acted in self-defense, and that is our contention. That's the last thing he says, so he wants to emphasize it. When you say something that's the last thing, you emphasize it. Sure. Strunk away at number 22. Right. Well, like in performance, it's the first and last thing you say, and the middle is mush, but you want to have the last thing to be good. Right. So that's his last statement, so we know we're going to have a self-defense case. That also telegraphs his punches to the prosecution so they know that Hobbs is going to have to testify to at least the first two elements of the affirmative defense of self-defense, and so they can start to prepare an outstanding cross-examination of Hobbs. That's what Hobbs does testify to. And then the closing argument is 44 record pages. At record page 770-773, the defense counsel specifically argues the three elements of self-defense,  He also argues at transcript 781 that multiple wounds do not negate the claim of self-defense. Well, I'm having trouble seeing. I mean, I would be surprised if your opposing counsel doesn't agree that self-defense is the issue. The question is whether drugs help. Knowing about a history of drugs increases your credibility or decreases your credibility. I submit. That's the issue, right? I submit that, yes, the state court did say that the credibility issue of the two witnesses on each side is very important. The state court did correctly point out that sometimes to establish credibility, you have to, in this case, have your defendant testify candidly about everything in the case. My other argument to that is, as I said before, is when you have these three elements of the affirmative defense of self-defense, this stuff is going to come in anyway. When you have somebody who's going to a house to sell drugs, and you have somebody who's a drug dealer who testifies, as Hobbs did, he's carrying a concealed weapon because he's a drug dealer, there's going to be some problems with that anyway, and so you may as well go with a high-risk, high-reward strategy and let it all hang out. What else can you do? You could try to limit it, I guess. You could, and you could go with your appellate issue. You could, yeah. That would be another strategic choice. I'm just not catching exactly what your point is. It sort of assumes the question I'm asking, which is why do we know that that helps your credibility? It seems like you could go with the high-risk, high-reward, whatever you're calling it, strategy of saying self-defense. And to argue self-defense, you want somebody credible, and they're less credible when they do drugs all the time. Well, no, excuse me if I may come back to that. The first element, he has to show that he didn't go to the house, that is, the victim's cousin's house, looking for the victim. He went to the victim's cousin's house looking to sell drugs to the cousin. Right, so why do you have to do that? So those drugs are going to come in. Then you get to the concealed weapon in the second and possibly the third element. He's carrying a concealed weapon because he always carries a concealed weapon. He isn't gunning for the victim. What do those things have to do with self-defense? Gunning for the victim or not gunning for the victim and still have self-defense or not have self-defense? Well, he has to show that he's not in fear of imminent death or bodily harm and his only choice is a use of force. If he's carrying the force with him, ready to go, any time. And then the other guy pulls the trigger. It's self-defense. Well, that's their argument, but that's not the prosecution's view of the case. The defense did argue the gun that had DNA on the barrel that comes up a year later. That's the defense argument. That's part of the defense argument. But he has to explain why he has a concealed weapon. As I understand your argument, he needs to explain why he's there that day. One explanation the jury might think is he's mad about the license plate and he goes there for this confrontation and this is what happens. The true explanation, it appears, and at least according to the defense, is he goes there to sell drugs and fortuitously this other guy shows up and this happens. But even if that is true, that he needs to put in front of the jury that he went to that residence that day to sell drugs, why does he have to continue on? Why does counsel reasonably make a decision to continue on and embellish that, talking about when he's dealing drugs when he's 17, how many guns do you have at home, et cetera? What does that add to the explanation, the relatively benign explanation as to why he went to that residence that day? It seems totally irrelevant to everything. Far from what I said about concealed weapon, which may not be convincing, but he does know that he's going to testify later. Hobbs has to testify in a self-defense case. And he's going to testify as to all of this. And I can't imagine, although possibly you could, but it's very unlikely that a well-prepared cross-examination by the prosecution is not going to bring out all of that information anyway. Well, I mean, but I guess he stops fighting the admission of all this testimony. Is that correct? He does, yeah. Why stop fighting it? I mean, it's totally irrelevant, I think, even to the defense, or at least I don't see the relevance even to the defense theory, which I think you have a point about that, and I understand that. But, I mean, it just goes way overboard and just has nothing to do with why he went there that day. I made my argument, and of course it's not convincing. Well, I guess, I mean, I just want to make sure I'm not missing your point. I understand the testimony regarding that day. I don't understand why he would not object to stuff that happened years before, guns at home and all that. Well, but having a concealed weapon does infer prior drug activity. If you're carrying drugs and money around, it suggests that you've been. So what? I mean, that prior activity is irrelevant, isn't it? Well, but it goes to explain why you're carrying a concealed weapon. If you have to explain why you're carrying a concealed weapon to meet the second and third elements of the affirmative. I suppose. You can't say I started dealing drugs today, and now I've got so many hundreds of dollars and so many drugs in my purse because I only did it today. If you're going there to deal drugs, maybe that's a good enough explanation why you had a weapon that day. But, okay, well, I think I understand your argument. I just want to make sure I wasn't missing something. I might add that the State Court of Appeals pointed out, as Your Honor pointed out, that this was, I think you both pointed out, that this was a credibility issue, and therefore there was, in the State Court of Appeals' view, there was this additional reason for bringing all this in. I'd like to conclude with a quick comment. You know the double-deference standard. You hear the usual gobbledygook from wardens. I'm not going to go into that. To clarify the witnesses, Abrams and Hobbs testified for the defense. It was Gaston and Mackey for the prosecution. Gaston's testimony is very compelling. If you want to know what this case is about, read what Gaston says.  It goes a long way to explain the case. I, again, pointed out that as opposed to the continuing objection, the defense pursued a high-risk, high-reward strategy. Coroner's testimony is pretty damning in this case because of the wounds, the direction of the wounds, the number of the wounds. The testimony of Abrams, who testified for the defense, there were two volleys of shots. Does that second volley potentially go to the question of prejudice, in this case, for the Strickland claim, in your view? It makes it look like there's no actual prejudice to whatever is going to happen in this case when you have two volleys of shots. Correct. Abrams said that there were four shots and then a pause and then four more shots. The evidence was from the coroner that there were six wounds. Right. But it's the pause that's the damning part of the whole thing that indicates that the elements of affirmative defense, of self-defense, are not going to happen in this case for that reason practically alone. And the coroner confirms them. The combination of the coroner's testimony and Abrams' testimony makes it a very strong case for the prosecution. Are there any other questions? I would ask the court to affirm the district court. Thank you very much. Thank you, sir. Well, I disagree with the supposition that the subject of a drug deal that day was going to come into evidence. My colleague mentions the opening statements. The prosecutor never told the jury that we're going to present evidence that Mr. Hobbs went there that day to do a drug deal. And the defense counsel likewise never mentioned anything about drugs or guns. And I think that this was in recognition of the court's preliminary ruling that this would be off limits. So I don't think that's a fair supposition. And I would again stress, even though it's a pre-Adepa case, that White v. McAnitch addresses the very same type of scenario, albeit in the context of a sex case. What is your best case from the U.S. Supreme Court, factually, closest factually case that you would say that's the precedent that should have informed the state court of appeals? I would say, well, obviously, Strickland, and then we have Hinton. Now, there's no Supreme Court case that I'm aware of that deals with the precise scenario here. Right, and I'm just asking what's the closest. So Hinton. Right. Well, Strickland says a defense attorney must perform a reasonable, legal, and factual investigation, and Hinton centers on the legal part of it. And I think that's where defense counsel just went astray. I don't think he was sure of himself how strong his argument was that this type of evidence should be excluded, and that's why he just kind of laid down and let things go and went with the strategy, just let it all in. It's just not a reasonable strategy in light of the strong case law in Ohio foreclosing the prosecution from using all this extraneous other acts testimony to dirty up a defendant and convict them in a case where credibility is the issue. All right. Thank you very much, Mr. Belli. Thank you both for your arguments. And Mr. Belli, we want to thank you in particular for your representation here under the Criminal Justice Act. You have done an exemplary job in your brief and here at argument as you usually do, so we thank you. Clerk may call the next case.